**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NUMBER:   1:22-CR-49** |
| ) | |
| **ECHO A. SCHEIDT** ) | |
| ) | |
| **Defendant.** ) | |

## MOTION TO DISMISS COUNTS 1-5 OF INDICTMENT

COMES NOW Defendant Echo A. Scheidt, by her counsel Michelle Kraus, moves to dismiss counts 1-5 of the indictment against her on the grounds that 18 U.S.C. § 922(a)(6) is unconstitutional and because the indictment fails to state an offense under Rule 12(b) of the Federal Rules of Criminal Procedure.  Ms. Scheidt's motion to dismiss is based on the Second Amendment to the United States Constitution, the United States Supreme Court's holding in *N.Y. Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), and District Judge Robert Miller's October 31, 2022, opinion and order in *United States v. Holden*, 22-CR-30, ECF No. 32 (N.D. Ind. Oct. 31, 2022). In moving to dismiss, Ms. Scheidt is raising a facial and as-applied constitutional challenge to § 922(a)(6).

### Introduction

On August 24, 2022, the government filed a six-count indictment.  *See generally* ECF No. 1.  In counts 1-5, the government alleges violations of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) (the penalty provision).  *See id.* at 5-6.  In counts 1-5, the government claims, that on various dates in 2022, Ms. Scheidt provided "knowingly" "false and fictious" statements regarding "a fact material to the lawfulness of" the "sale of" a firearm to two different firearm purveyors, In-laws & Outlaws

Gun Shop and Trading Post, LLC, in "connection with the acquisition and attempted acquisition of a firearm . . ." *Id.* at 1*; see generally id.* The indictment alleges that the false statements regarding "a fact material" are: 1.) that Ms. Scheidt "represented that she resided at 1327 W. Euclid Ave[nue] and that [she] denies she was an unlawful user of marijuana, knowing that information to be false." *Id.* at 1; *see generally id.* Counts 1-5 occurred allegedly on assorted dates between February and April of 2022.

<u>Argument Summary</u>

Section 922(a)(6) is no longer a legitimate constitutional criminal regulation after *Bruen*. Ms. Scheidt's instant motion is, in part, a claim that she, indeed anyone, is immune from prosecution, a finding of guilt, and state sanction under § 922(a)(6), post-*Bruen*, because: 1.) the statute infringes on the Second Amendment right to keep and bear, to possess, firearms by conditioning firearm possession on impermissible criteria including, namely, indictment status and marijuana use; 2.) Ms. Scheidt is among "the people" the Second Amendment protects; and 3.) the statute facially cannot survive the history and tradition scrutiny test the Supreme Court now demands in analyzing firearm regulations under *Bruen*. Accordingly, this Court should grant Ms. Scheidt's request to dismiss the indictment as to counts 1-5.

The core of this case as stated in counts 1-5, is that Ms. Scheidt allegedly submitted the false material information on the Bureau of Alcohol, Tobacco, and Firearm's ("ATF") Form 4473 ("Form 4473"). *See generally id.* Form 4473 requires that a person attempting to acquire a firearm from a firearm dealer or purveyor, complete a questionnaire before they possess the sought firearm. *See* Ex. A (Form 4473); *see also* Form 4473 Blank https://www.justice.gov/usao-nh/page/file/1245526/download (last accessed February 10, 2023). Among other things, Form 4473 requires that the firearm buyer/transferee state whether they are "under indictment or information in any court for a felony, or any other crime for which the judge could imprison you

for more than one year," and whether they are a "user or addict of a controlled substance[.]" *See* Ex. A.  Form 4473 itself does not define the term "user" or "addict" of a controlled substance.  At issue here, as alleged in counts 1-5, is that Ms. Scheidt misrepresented that she was not a "user" of marijuana.  The Form does not state that "user" means active marijuana use at the time of firearm possession, active use at the time the Form is being completed, not active use but still under the effects of the use when the Form is being completed, or prior use within a specific time period, for example, any use for the proceeding day, week, month, or year.  What it means to "use" a controlled substance is not clearly nor readily defined in the Form.  In effect, any person, and specifically Ms. Scheidt, who as ever used marijuana in completing the Form, is forced to guess as to the whether the term "user" applies to them.

Though not stated on the Form, the Attorney General has promulgated a joint definition of the terms "user" and "addict" that is no less unworkable:

> Unlawful user of or addicted to any controlled substance.  A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician.  Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm.  An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year.

27 C.F.R. § 478.11.  Under the C.F.R. a person, such as Ms. Scheidt may be a "user" if their use occurred potentially within the last five years.  Such an extreme, malleable, and broad standard of "use" of a controlled substance as an applied basis to deprive a person of their constitutionally

3

protected act of firearm possession is anathema to the national historical practice of restricting fire possession, and consequently, fails the *Bruen* test.

Further, the government has failed to state an offense in counts 1-5.  Form 4473 does not align with §§ 922(a)(6), and in fact, Form 4473 expands firearm-related criminal liability far beyond the text of § 922(a)(6) and the concomitant firearm chapter, Chapter 44. *See* Chapter 44, 18 U.S.C. §§ 921 et seq. As set forth below, though Form 4473 purportedly is based on the firearm chapter, the information sought in Form 4473 is far broader and inconsistent with Chapter 44's expressed informational demands. Consequently, Ms. Scheidt's alleged omissions in completing Form 4473 is not dispositive as to whether she violated § 922(a)(6), or whether she failed to provide the required firearm transferee information under the firearm criminal chapter. In this case, even assuming Ms. Scheidt did not accurately complete Form 4437, the facts alleged still do not establish violations of § 922(a)(6) as the alleged false information she provided *is not material* to the sale or disposition of a firearm.

Furthermore, as applied, the government's claim that Ms. Scheidt's marijuana use justifies a front-end restriction of her Second Amendment right to possess – keep and bear – firearms fails to state an actual offense.  To that point, on October 6, 2022, President Joseph R. Biden issued a proclamation pardoning federal felony convictions for simple marijuana possession.  *See President Joseph R. Biden's October 6, 2022, Presidential Proclamation* https://www.whitehouse.gov/briefing-room/presidential-actions/2022/10/06/granting-pardon-for-the-offense-of-simple-possession-of-marijuana/ (last accessed February 10, 2023). President Biden's pardon applies to marijuana possession occurring "on or before the date of this proclamation, regardless of whether they have been charged with or prosecuted for this offense [felony simple marijuana possession] on or before the date of this proclamation." *Id.*; *see also* 21

4

§ U.S.C. 844.  The presidential pardon compels dismissal as Ms. Scheidt was no longer "an unlawful user" of a controlled substance at the time of her alleged firearm conduct.  As such, dismissal of counts 1-5 is warranted based on the references to Ms. Scheidt's alleged marijuana use.

**I.     Under *Bruen*, § 922(a)(6), violates the Second Amendment, as the statute burdens and restricts the constitutionally protected conduct of firearm possession and is inconsistent with the nation's firearm history and tradition.**

The Second Amendment to the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." *In District of Columbia v. Heller*, the Supreme Court held the Second Amendment enshrined a pre-existing *individual* right to possess and use firearms.  554 U.S. 570, 592, 624 (2008).  In *Bruen*, the Supreme Court held "consistent with *Heller* . . . the Second [Amendment] protect[s] an individual's right to carry a handgun for self-defense outside the home . . . ." 142 S. Ct. at 2122.

Two years after *Heller*, in *McDonald v. City of Chicago*, the Court reaffirmed Heller's "central holding." 561 U.S. 742, 780 (2010). The Court reasoned that the right to keep and bear arms as "fundamental to our scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition." *Id.* at 767. The Court cautioned that Second Amendment protections from state interference and regulation should not be treated "as a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Id.* at 780.

Before *Bruen*, applying *Heller* and *McDonald*, reviewing courts "had coalesced around a two-step framework when assessing Second Amendment claims, combining a historical analysis with means-end scrutiny." *United States v. Quiroz*, 4:22-cr-104-DC, Order, ECF No. 82, at p. 4

(W.D. Tex. Sept. 19, 2022) (internal citation omitted) (abrogating § 922(n) on Second Amendment grounds applying *Bruen*).

> But in *Bruen*, Justice Thomas stated the two-step[, means-end] approach was one step too many.  In its place, Justice Thomas [elucidated] a new standard courts must follow: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command. So[,] the threshold question is whether the Second Amendment's plain text covers Defendant's conduct.

*Id.* at 5 (internal citation omitted). "Ultimately, as understood in 2022, the Second Amendment protects rights that are enshrined with the scope they were understood to have when the people adopted them" and Second Amendment rights are no longer subject to balancing of the purported state interest.  *Holden*, 22-CR-30, ECF No. 32, at p. 6.

Applying the *Bruen* test, "the government may not simply posit that [a] regulation promotes an important interest." 142 S. Ct. at 2126.  This test requires courts to "consider whether historical precedent . . . evinces a comparable tradition of regulation."  *Id.* at 2131-32. If "no such tradition" exists, then the statute being challenged is unconstitutional.  *Id.* at 2132.  In the event that there are "multiple plausible interpretations" of an ambiguous historical record, a reviewing court must "favor the one that is more consistent with the Second Amendment's command." *Id.* at 2141 n.11; *see also id.* at 2139 (concluding that where "history [is] ambiguous at best," it "is not sufficiently probative to defend [a statute]"). The "[g]overnment bears the burden" of "affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."  *Id.* at 2127.

To summarize, post-*Bruen* the "standard for applying the Second Amendment" to a challenged firearm regulation now requires a reviewing court to do the following: 1.) if the

Second Amendment's "plain text" covers an individual's conduct, courts must presume the Constitution "protects that conduct[;]" 2.) to rebut this presumption of constitutional protection, the government must show that the challenged firearm restriction is "consistent with the Nation's historical tradition of firearm regulation[:]" 3.) however, if the government cannot do so, the law is unconstitutional. *See id.* at 2129–30 (quotations omitted).  Because "constitutional rights are enshrined with the scope they were understood to have when the people adopted them," this analysis is tethered to the historical tradition in place when the "Second Amendment was adopted in 1791." *Id.* at 2136 (citation omitted).  Crucially, in *Bruen,* the United States Supreme Court opined that, "[t]he Second Amendment guaranteed to *all Americans the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions*."  *Id.* at 2156 (internal citations omitted) (emphasis added).

 *A.  Section 922(a)(6) fall within the Second Amendment's Protective Ambit.*

 Section 922(a)(6) criminalizes the act of "knowingly [making] any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive [a licensed] importer, manufacturer, dealer, or collector" regarding "*any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter*."  (emphasis added).  The "chapter" referred to in the statutory text is Chapter 44, Firearms, of the United States Criminal Code.  *See* 18 U.S.C. §§ 921-934.  Thus, under § 922(a)(6), a person attempting to acquire a firearm from a licensed firearm importer, dealer, or manufacturer may not provide knowingly false *material information* as set forth in Chapter 44.

 As to § 922(a)(6), Chapter 44 does not expressly identify what exactly constitutes "material information" bearing on the lawfulness of the "sale or other disposition" of any firearm.  §

922(a)(6). Despite the lack of an identifiable materiality standard in § 922(a)(6), two specific provisions of Chapter 44, 18 U.S.C. §§ 922(d) and 922(t), impose information or restrictions on firearm transfers with respect to the firearm transferee. In effect, relevant to § 922(a)(6), firearm transferors must obtain certain information as set forth in §§ 922(d) and 922(t) before legally disposing of a firearm to the transferee.  Accordingly, § 922(a)(6)'s material lawfulness language relates back to §§ 922(d) and 922(t).  Applying those statutes, §§ 922(d) and 922(t), both affect the right to possess a firearm by a person, among other things, subject to indictment and based on controlled substance use.

First, under § 922(d) (emphasis added):

It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person, including as a juvenile—

(1) *is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year*;

(2) is a fugitive from justice;

(3) is an unlawful user of or addicted to any controlled substance . . . ;

(4) has been adjudicated as a mental defective or has been committed to any mental institution at 16 years of age or older;

(5) who, being an alien—

(A) is illegally or unlawfully in the United States; or

(B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)));

(6) who has been discharged from the Armed Forces under dishonorable conditions;

(7) who, having been a citizen of the United States, has renounced his citizenship;

(8) is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or

person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child, except that this paragraph shall only apply to a court order that—

(A) was issued after a hearing of which such person received actual notice, and at which such person had the opportunity to participate; and

(B)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;

(9) has been convicted in any court of a misdemeanor crime of domestic violence;

(10) intends to sell or otherwise dispose of the firearm or ammunition in furtherance of a felony, a Federal crime of terrorism, or a drug trafficking offense (as such terms are defined in section 932(a)); or

(11) *intends to sell or otherwise dispose of the firearm or ammunition to a person described in any of paragraphs (1) through (10).*

Similarly, § 922(t) limits the transfer and receipt of firearms by (emphasis added):

(t)(1) Beginning on the date that is 30 days after the Attorney General notifies licensees under section 103(d) of the Brady Handgun Violence Prevention Act that the national instant criminal background check system is established, a licensed importer, licensed manufacturer, or licensed dealer shall not transfer a firearm to any other person who is not licensed under this chapter, unless—

(A ) before the completion of the transfer, the licensee contacts the national instant criminal background check system established under section 103 of that Act;

(B)(i) the system provides the licensee with a unique identification number; or

(ii) subject to subparagraph (C), 3 *business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that the receipt of a firearm by such other person would violate subsection [18 U.S.C. §§ 922(g) and 922(n)] of this section, or State, local, or Tribal law; and*

(C) in the case of a person less than 21 years of age, in addition to all other requirements of this chapter— (i)the system provides the licensee with a unique identification number;

(ii) 3 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that cause exists to further investigate a possibly disqualifying juvenile record under subsection (d); or

(iii) in the case of such a person with respect to whom the system notifies the licensee in accordance with clause (ii) that cause exists to further investigate a possibly disqualifying juvenile record under subsection (d), 10 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that—

(I) transferring the firearm to the other person would violate subsection [§ 922(d)] of this section; or

(II) *receipt of a firearm by the other person would violate subsection[18 U.S.C. §§ 922(g) and 922(n)] of this section, or State, local, or Tribal law; and*

(D) the transferor has verified the identity of the transferee by examining a valid identification document (as defined in section 1028(d) of this title) of the transferee containing a photograph of the transferee.

As shown above, § 922(a)(6)'s material fact or information requirements criminally regulate the receipt – the possession – of firearms for certain classes of firearm possessors, including those under indictment and users of controlled substances, including marijuana. Again, *before* a firearm transferee receives and takes possession of a firearm, they, among other things, must have their indictment status verified and vetted and provide information regarding controlled substance use. If the transferee knowingly provides false information regarding the material information, including indictment status and drug use, the transferee's possession is criminalized under § 922(a)(6).

Therefore, the Second Amendment's plain text facially covers and protects the individual conduct at issue here – the regulatory means, process, and potential consequences by which the transferee may obtain, *possess, and receive* a firearm. Since § 922(a)(6) regulates any transferee's firearm possessory interests, the statute facially falls within the Second Amendment's plain text. Stated differently, as the statute imposes an ex ante "*burden[]* [on] activity protected by the Second

Amendment" e.g., the right to keep and bear arms – possession or receipt – it falls within the protective Second Amendment framework. *Holden*, 22-CR-30, ECF No. 32, at p. 10 (emphasis added); *see, e.g.*, *id.* at 6 (reasoning that "[r]eceiving a firearm is necessarily a precursor to keeping or bearing a firearm, so Ms. Holden's conduct is presumptively protected by the Second Amendment."); *see also Quiroz*, 4:22-cr-104-DC, ECF No. 82, at pp. 3-4 (holding that "to keep and bear Arms" includes receiving firearms); *see*, *e.g.*, *United States v. Rahimi*, No. 21-11001 (5th Cir. Feb. 2, 2023) (finding that 18 U.S.C. § 922(g)(8) (firearm possession prohibited on the basis of a domestic restraining order) is facially unconstitutional applying *Bruen*) (quoting *Bruen*, S. Ct. at 2133) (reasoning that Second Amendment protections apply to firearm restrictions that "burden a law-abiding citizen's right to armed self-defense" in the first instance, after which, the *Bruen* analysis then shifts to the history and tradition test).

"The Second Amendment protects the people's right to keep and bear arms. The United States does not dispute that the Second Amendment's plain text covers receiving a firearm-receipt is the condition precedent to keeping and bearing arms. Therefore, the Second Amendment's plain text covers [a person's] receipt of a firearm . . . ." *United States v. Stambaugh*, 5:22-cr-218-PRW, Order ECF No. 58 at p. 6 (W.D. Okla. Nov. 14, 2022) (holding § 922(n) unconstitutional applying *Bruen*). As a result, given that § 922(a)(6) affects and burdens firearm possession, including, among others, the class of possessors under indictment, it falls within the Second Amendment's protective ambit.

> B. *Ms. Scheidt and alleged violators of § 922(a)(6) remain part of "the people" for which the Second Amendment confers protection.*

Ms. Scheidt, and any alleged violator of § 922(a)(6), apply to "The people" the Second Amendment protects. Because the statute affects the possessory firearm rights of those under indictment – those only accused of a criminal act – the statute, though criminal, is subject to Second

Amendment scrutiny under *Bruen*. *See, e.g., id.* at 5 (internal citations omitted) (reasoning that "when the bedrock principle of our system of criminal justice is that those accused of crimes are innocent until proven guilty, it should go without saying that a person indicted for a felony is not a felon. And categorically deeming those indicted for felonies non-law- abiding  and dangerous-as the United States urges-is at odds not only with the presumption of innocence, but also with our system of pre-trial detention, where judges are tasked with making individualized determinations of dangerousness. Therefore, as a person who is presumed to be a law-abiding citizen until proven otherwise at trial, [a person under indictment] remains part of the people whom the Second Amendment protects.").

The government has consistently argued in *Bruen* related challenges that criminal defendants are categorically excluded from Second Amendment protection – that they are not part of "the people" as referenced is the Second Amendment.  The government is incorrect.

The Second Amendment, along with the First, Second, Fourth, Ninth, and Tenth Amendments, in the Bill of Rights refers to "the people."  Within the Constitution, "the people" is a "term of art"—wherever it occurs, "the term unambiguously refers to *all members of the political community, not an unspecified subset.*"  *Heller*, 554 U.S. at 580-81 (emphasis added); *accord United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990) (The term "the people" "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.").  The Second Amendment right—no less than the others mentioned above—"belongs to all Americans."  *Heller*, 554 U.S. at 581.

As the Fifth Circuit Court of Appeals recently clarified:

To be sure, as the Government argues, *Heller* and *Bruen* also refer to "law-abiding, responsible citizens" in discussing the amendment's reach (*Bruen* adds "ordinary,

law-abiding citizens"). But read in context, the Court's phrasing does not add an implied gloss that constricts the Second Amendment's reach. *Heller* simply uses the phrase "law-abiding, responsible citizens" as shorthand in explaining that its holding (that the amendment codifies an individual right to keep and bear arms) should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings . . . ." *Id.* at 626–27; *see also id.* at 627 n.26 ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive."). In other words, *Heller's* reference to "law-abiding, responsible" citizens meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights. *Bruen's* reference to "ordinary, law-abiding" citizens is no different. *See* 142 S. Ct. at 2134.

The Government's reading of *Heller* and *Bruen* also turns the typical way of conceptualizing constitutional rights on its head. "[A] person could be in one day and out the next: the moment he was convicted of a violent crime or suffered the onset of mental illness, his rights would be stripped as a self-executing consequence of his new status." *Kanter [v. Barr]*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting). This is "an unusual way of thinking about rights [because [i]n other contexts that involve the loss of a right, the deprivation occurs because of state action, and state action determines the scope of the loss (subject, of course, to any applicable constitutional constraints)." *Id.* "Felon voting rights are a good example: a state can disenfranchise felons, but if it refrains from doing so, their voting rights remain constitutionally protected." *Id.* at 453. The Government fails to justify this disparate treatment of the Second Amendment. Perhaps most importantly, the Government's proffered interpretation lacks any true limiting principle. Under the Government's reading, Congress could remove "unordinary" or "irresponsible" or "non-law abiding" people—however expediently defined— from the scope of the Second Amendment. Could speeders be stripped of their right to keep and bear arms? Political nonconformists? People who do not recycle or drive an electric vehicle? One easily gets the point: Neither *Heller* nor *Bruen* countenances such a malleable scope of the Second Amendment's protections; to the contrary, the Supreme Court has made clear that "the Second Amendment right is exercised individually and belongs to all Americans," *Heller*, 554 U.S. at 581. *Rahimi*, while hardly a model citizen, is nonetheless part of the political community entitled to the Second Amendment's guarantees, all other things equal.

*Rahimi*, No. 21-11001, p. 8-9 (citations in the original).

A district court in *United States v. Harrison*, Case No. CR-22-00328-PRW, Order, ECF

No. 36, n.20, 21 (W.D. Okla. Feb. 3, 2023) (quotations in original) finding that 18 U.S.C. §

922(g)(3) (prohibited firearm possession based on use or addiction to a controlled substance)

(quotations in the original), also recently rejected the government's limited construction of the term "the people" in the Second Amendment:

> On this point, the United States points to *Bruen's* description of the plaintiffs in that case as "ordinary, law-abiding, and adult citizens." *Bruen*, 142 S. Ct. at 2134. But that description can't be read as breaking new ground with respect to who make up "the people" protected by the Second Amendment. First, *Bruen* noted that it was undisputed that the plaintiffs in that case were part of the people protected by the Second Amendment, so at best, the United States is relying on dicta. But even so, the United States is reading too much into the dicta because immediately after describing the plaintiffs, the *Bruen* Court cited *Heller's* holding that "the people" includes "all members of the political community," not just "an unspecified subset." *Id.* (citing *Heller*, 554 U.S. at 580). Thus, this reference in dicta to "law-abiding citizens" cannot possibly be read as overturning the very holding upon which it relies. *See Denezpi v. United States*, 142 S. Ct. 1838, 1847–48 (2022) (explaining that stray statements "[r]ead in isolation . . . . cannot overcome the holdings of our cases, not to mention the text of the Clause"). . . . Frankly, it's not even clear this is carving out a "subset," as much as an outright declaration of the federal government's belief that it can deprive practically anyone of their Second Amendment right. Who among us, after all, isn't a "lawbreaker"? For sure, there may well exist some adult who has never exceeded the speed limit, changed lanes without signaling, or failed to come to a complete stop at a stop sign, but they are few and far between.

Like the defendant in *Rahimi* and *Harrison*, Ms. Scheidt remains part of "the people" the Second Amendment protects. Indeed, no circuit court has adopted the government's flawed and potentially dangerous reasoning that certain members of the body politic are not within "the people" of a constitutionally secured right. *See Range v. Attorney General*, No. 21-2835, Order, ECF No. 69 (3d Cir. 2021 ) (on November 16, 2022, a Third Circuit Court of Appeals panel found the term "the people" in the Second Amendment as not applying to the defendant charged under 18 U.S.C. § 922(g)(1), however, on January 6, 2023, the full Circuit Court vacated the panel opinion: "[a] majority of the active judges having voted for rehearing en banc in the above captioned case, it is ordered that the petition for rehearing is GRANTED. The case will be argued before the en banc court on Wednesday, February 15, 2023 at 10:00 a.m. The opinion and judgment entered November 16, 2022[,] are hereby vacated.").

14

Like other constitutional provisions, the Second Amendment does not and should not hinge on whether a person is an "*ordinary*, law-abiding, and adult citizen[]." *Bruen*, S. Ct. 142 at 2134 (emphasis added); *see also United States v. Price*, No. 2:22-CR-00097, 2022 WL 6968457, at *7 (S.D.W. Va. Oct. 12, 2022) (analyzing 18 U.S.C. § 922(k)) (defendant part of "the people"); *United States v. Pierre*, No. 1:22-cr-20321-JEM, ECF No. 53 (S.D. Fla. Nov. 28, 2022) (analyzing 18 U.S.C. § 922(g)(1)) (same); *United States v. Hester*, No. 1:22-cr-20333-RNS, ECF No. 39 (S.D. Fla. Jan. 27, 2023) (analyzing § 922(g)(1)) (same); *United States v. Barber*, No. 4:20-CR-384-SDJ, 2023 WL 1073667, at * (E.D. Tex. Jan. 27, 2023) (analyzing§ 922(g)(1)) (same); *United States v. Martin*, No. 2:21-CR-00068, 2023 WL 1767161, at *2 (D. Vt. Feb. 3, 2023)) (analyzing § 922(g)(1)) (same); *United States v. Combs*, No. CR 5:22-136-DCR, 2023 WL 1466614, at *3 (E.D. Ky. Feb. 2, 2023) (analyzing 18 U.S.C. § 922(g)(8)) (same); *United States v. Carbajal-Flores*, No. 20-CR-00613, 2022 WL 17752395, at *3 (N.D. Ill. Dec. 19, 2022) (analyzing 18 U.S.C. § 922(g)(5)) (same).  Indeed, the Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U.S. at 780.  'Ordinary' or not, Ms. Scheidt and alleged violators of § 922(a)(6) are protected by the Second Amendment.

### C.  *Sections 922(a)(6)'s Regulatory Scope is Inconsistent with the Nation's Firearms History and Tradition.*

Section 922(a)(6) potentially criminalizes possession and receipt of a firearm through imposing information requirements regarding and addressing among other things, first and foremost, the firearm possessor's indictment status (the same as  § 922(n), found unconstitutional in *Holden*); conviction status (the same as 18 U.S.C. § 922(g)(1) (felonies convictions)); specified misdemeanor convictions (the same as 18 U.S.C. § 922(g)(9)); controlled substance addiction or use (the same as  § 922(g)(3)); mental health adjudications (the same as 18 U.S.C. § 922(g)(4));

fugitive status (the same as 18 U.S.C. § 922(g)(2)); military discharge status (the same as 18 U.S.C. § 922(g)(6)); and alienage and citizenship status (the same as 18 U.S.C. §§ 922(g)(5) and (g)(7)).

At this second step of the *Bruen* analysis, the government will not be able to proffer evidence showing a national firearm history and tradition from the time of the founding supporting § 922(a)(6)'s restrictions on firearm possession and receipt. Indeed, Judge Miller has already found that firearm possessory restrictions or burdens based on nothing more than a filed indictment, *see* § 922(n), fail the constitutional history and tradition scrutiny test set forth in *Bruen*. *See, e.g., Holden*, 22-CR-30, ECF No. 32, at p. 10 (internal citations omitted) (holding that "Section 922(n) burdens activity protected by the Second Amendment, and the government hasn't shown that the regulation is consistent with the history and tradition of firearm regulation that delimits the outer bounds of the right to keep and bear arms. Under the new Second Amendment standard, § 922(n) is unconstitutional."); *see also e.g.*, *Quiroz*, 4:22-cr-104-DC, ECF No. 82, at p. 25 (holding that the "Second Amendment is not a second class right.  No longer can courts balance away a constitutional right.  After *Bruen*, the Government must prove that laws regulating conduct covered by the Second Amendment's plain text align with this Nation's historical tradition. The Government does not meet that burden.  Although not exhaustive, the Court's historical survey finds little evidence that § 922(n)—which prohibits those under felony indictment from obtaining a firearm—aligns with this Nation's historical tradition. As a result, this Court holds that § 922(n) is unconstitutional.").

Moreover, § 922(a)(6) facially implicates the firearm possession rights of marijuana users, similar to § 922(g)(3).  In effect, the statute's pre-possession information requirements and restrictions amount to a total criminal prohibition or ban on firearm possession by users of marijuana, even in their home, for any purpose of the use, including for self-defense.  Such a broad

ban and total criminal prohibition on firearm possession for users of an intoxicant is not analogous to any founding period firearm restriction. *See*, *e.g.*, *Harrison*, Case No. CR-22-00328-PRW, Order, ECF No. 36, p. 16 (distinguishing: "the seven laws the United States identifies [as historical analogues] took a scalpel to the right of armed self-defense—narrowly carving out exceptions but leaving most of the right in place—§ 922(g)(3) (loss of the right to possess a firearm based on controlled substance use) takes a sledgehammer to the right. Recall that § 922(g)(3) imposes the most severe burden possible: a total prohibition on possessing any firearm, in any place, for any use, in any circumstance—regardless of whether the person is actually intoxicated or under the influence of a controlled substance. It is a complete deprivation of the core right to possess a firearm for self-defense, turning entirely on the fact that an individual is a user of marijuana. Section 922(g)(3)'s burden on the right of armed self-defense is thus not comparable to the seven historical intoxication laws."

In fact, firearm possession and use of intoxicants has persisted since the 18th century, without a corresponding historical total restriction and ban on firearm possession based on substance use as imposed under 922(a)(6)'s materiality and information restrictions. *See United States v. Harris*, No. 21-3031, Reply Brief, ECF No. 43 at pp. 8-9 (3d Cir. 2021). In *Harris*, "the government acknowledge[d] that no similar provision to § 922(g)(3)'s prohibition on firearm possession by an unlawful user of any controlled substance or addict existed at the time of ratification." No. 21-3031, Reply Brief, ECF No. 43 at p. 9 (3d Cir. 2021). "The lack of a distinctly similar historical regulation prohibiting users of intoxicants from possessing firearms establishes that § 922(g)(3) is inconsistent with the Second Amendment." *Id.* That intoxicant use has been extant since the founding without a corresponding criminal prohibition on firearm possession for intoxicant users or addicts demonstrates that 922(a)(6) and the materiality and informational

restrictions imposed on firearm possession are without historical tradition.

In addition, applying Form 4473 and the Attorney General's standard of "user" 922(a)(6)'s

deprivation of firearm possessory rights based on marijuana use are even more untenable:

> The United States suggests that § 922(g)(3) imposes a narrow burden on the right to possess a firearm because it does not permanently deprive the marijuana user of the right. Rather, a person may regain their right to possess a firearm by stopping their use of marijuana. But while theoretically impermanent, the deprivation imposed by § 922(g)(3) is significantly greater than the historical intoxication laws because even if one stops their use of a controlled substance, they could be deprived of their right to armed self-defense for up to a year after their last use. *See* 27 C.F.R. § 478.11 ("An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year."). The deprivation imposed by the historical intoxication laws, on the other hand, ceased the moment the person sobered up.

*Harrison*, Case No. CR-22-00328-PRW, Order, ECF No. 36, p. 16-17, n.40. Here, by contrast,

the concept of intoxicant or marijuana use under the C.F.R. goes far beyond terminating at the

point of sobriety, but rather, affords the government tremendous and ahistorical power to

criminalize and interfere with firearm possession for any purpose. At bottom, 922(a)(6)'s

materiality and information requirements extending to a vague use concept are not a *"reasonable,*

*well-defined restriction[]."* *Bruen,* S. Ct. at 2156.

The Second Amendment secures rights that are "enshrined within the scope they were

understood to have when the people adopted them." *Id*. at 2136. Fatally, here the government,

carrying its burden under *Bruen*, will be unable to proffer evidence showing that in 1791, firearm

possession could be restricted on the front-end and criminalized based on material fact and

information requirements, including representations regarding indictment status and an

undefinable framework of drug use, as a condition precedent for exercising the Second

Amendment protected act of firearm possession.

## II.    Section 922(a)(6) is Unconstitutionally Applied.

Applying the facts alleged in the indictment also violate Ms. Scheidt's Second Amendment rights. Through Form 4473, Ms. Scheidt's firearm possession here was conditioned on her providing information regarding indictment status and whether she is a user or addict of a controlled substance, among other things. Indeed, Ms. Scheidt's prosecution is based on her completion of Form 4473, which itself conditioned her firearm possession on providing constitutionally protected information regarding indictment status and drug use. *See* Ex. A.

 As applied, Ms. Scheidt's disarmament is inconsistent with the text and history of the Second Amendment. Specifically, the government cannot demonstrate that her sole marijuana use is a historical and traditional basis to criminally invade her pre-existing Second Amendment right to firearm possession.

Again, marijuana possession – logically essential to use – is subject to a presidential pardon for the period covering Ms. Scheidt's alleged marijuana use in counts 1-5.  A presidential "pardon not merely releases the offender from the punishment prescribed for the offence, but that it obliterates in legal contemplation the offence itself." *Carlisle v. United States*, 83 U.S. 147, 151 (1872); *see also Murphy v. Ford*, 390 F. Supp. 1372, 1374 (W.D. Mich. Mar. 28, 1975) (citing *Ex Parte Garland*, 71 U.S. 333, 334 (1867) (holding that when a defendant "had been neither indicted nor convicted of an offense against the United States does not affect the validity of the pardon."). Simply, as applied, the government is attempting to criminalize Ms. Scheidt's marijuana possession, for which punishment and the concomitant loss of civil rights flowing from a conviction have been absolved through the pardon. The government surely will not be able to offer a historically analogous criminal regulation proscribing firearm possession based on using a

substance at a time in which the sitting president through his pardon power proclaimed is no longer punishable conduct.

Fundamentally, as applied to Ms. Scheidt, § 922(a)(6) is not a well-defined firearm restriction. Here, the government is attempting to criminalize Ms. Scheidt's firearm possession based on her status as an unlawful user of marijuana, when use of marijuana during the relevant period is no longer "unlawful."

Plainly, Form 4473 includes impermissible criteria restricting firearm possession. As applied here, Ms. Scheidt has been prosecuted based on her response to a form that does not conform to the Second Amendment and should not be used as a means to restrict firearm possession.  Even assuming Ms. Scheidt provided inaccurate information on Form 4473, because Form 4473 itself violates the Second Amendment, this Court should dismiss the indictment against Ms. Scheidt.

### III.    The Indictment Fails to State an Offense.

Again, the core of this prosecution is Ms. Scheidt's alleged misrepresentations and omissions in completing Form 4473. In counts 1-5, Ms. Scheidt is alleged to have misrepresented her marijuana use and misrepresented her current address.

The authority for the creation of Form 4473, appears to be derived from 18 U.S.C. § 923(g)(1), which provides that the Attorney General may prescribe rules or regulations regarding the required information firearm manufactures, dealers, or importers must maintain from firearm transferees. [1] Form 4473's deficiency is that it expands criminal liability beyond the statutory

---

[1] Form 4473 is based on a statute, § 923(g)(1), which itself grants the Attorney General substantial and nearly unfettered discretion to create unguided and unintelligible regulations and corresponding forms with resulting criminal consequences inconsistent with the Second Amendment's historical maxims. As a result, Form 4473 is based on an underlying statute, § 923(g)(1), which violates the Supreme Court's non-delegation doctrine and provides an additional basis for this Court to grant Ms. Scheidt's motion to dismiss. *See Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935).

information or materiality requirements regarding transferees contained in the Firearm Chapter. For example, Ms. Scheidt is alleged to be a user of marijuana and her use is material. However, Form 4473, based on an imported C.F.R. defines "user" far more broadly than any common-sense or corresponding statutory standard of use. In effect, what the firearm chapter defines as material is expanded substantially through Form 4473.

In addition, Ms. Scheidt allegedly provided a non-current residential address, however, that information is not material transferee information under Chapter 44. The portions of Chapter 44, which require information regarding "a place of residence" deal primarily with the records of the transferor, 18 U.S.C. § 922(b)(5), however, the material information related to the means of identification of the buyer or transferee are contained in § 922(t) – a provision related to firearm background checks. Applying § 922(t), a firearm transferor need only review the transferee's valid identification, which need not list the transferee's current place of residence to function as a valid identification. *See* § 922(t)(1)(D) ("the transferor has verified the identity of the transferee by examining a valid identification document (as defined in section 1028(d) of this title) of the transferee containing a photograph of the transferee."). Section 1028(d), in turn, does not define identification to mean exclusively a current place of residence. *See, e.g.*, 18 U.S.C. § 1028(d) (stating that the term "false authentication feature means an authentication feature that— (A) is genuine in origin, but, without the authorization of the issuing authority, has been tampered with or altered for purposes of deceit; (B) is genuine, but has been distributed, or is intended for distribution, without the authorization of the issuing authority and not in connection with a lawfully made identification document, document-making implement, or means of identification to which such authentication feature is intended to be affixed or embedded by the respective issuing authority; or (C) appears to be genuine, but is not."). Though Form 4473 may require current place

of residence from the transferee, because Chapter 44 does not list that as a transferee requirement or as a necessary condition precedent for firearm possession, counts 1-5, here also fail to state an offense under § 922(a)(6) and must be dismissed under Rule 12(b)(3). Again, whether Ms. Scheidt violated Form 4473 is not controlling as to whether the applicable statute was violated.[2]

Finally, that counts 1-5 involve marijuana use, a matter subject of a presidential pardon, further supports dismissal at this juncture. Like *Holden*, and indictment status, Ms. Scheidt's alleged misrepresentation regarding marijuana use is no longer "material" to whether she may possess a firearm as her use of marijuana no longer renders her an unlawful user of a controlled substance during the periods alleged in the indictment.

Conclusion

Ms. Scheidt respectfully requests that this Court grant her motion to dismiss. Section 922(a)(6) facially and as applied violates the Second Amendment under the *Bruen* analytical framework. The statute criminalizes firearm possession, imposes a burden on firearm possession based on impermissible information criteria including indictment status and an unworkable and unknowable concept of marijuana use, and as such, is inconsistent with the nation's historical tradition of firearm regulation. Finally, the indictment as alleged fails to state an offense, and the indictment should be dismissed as to counts 1-5.

*Date*: <u>February 10, 2023</u>

Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

---

[2] As to address materiality applying Form 4473, Ms. Scheidt acknowledges *United States v. Queen*, 408 F.3d 337 (7th Cir. 2005), however, that case is distinguishable in that the Court there analyzed only Form 4473 and not the broader transferee materiality requirements under § 922(a)(6).

By:   s/ Michelle F. Kraus
Michelle F. Kraus
200 East Main Street
Ft. Wayne, Indiana 46802
Phone: (260) 422-9940
Email: Michelle_Kraus@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that, on February 10, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all parties of record.

 s/ Michelle Kraus