UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No.  1:22-CR-49 |
| | ) | |
| | ) | |
| ECHO A. SCHEIDT | ) | |

GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

Comes now the United States of America, by its counsel, Clifford D. Johnson, United States Attorney for the Northern District of Indiana, through Brent A. Ecenbarger, Assistant United States Attorney, and files this Government's Response to Defendant's Motion to Dismiss Counts 1-5.  In her motion, Defendant Echo E. Scheidt contends that 18 U.S.C. § 922(a)(6) is facially and as applied unconstitutional based upon *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).  Scheidt's claim, however, is without merit, and nothing in *Bruen* casts doubt on the ability of Congress to prohibit individuals from lying on ATF forms while purchasing firearms.

**INDICTMENT AND RELEVANT PROCEDURAL HISTORY**

A grand jury charged Scheidt in Counts 1 through 5 with knowingly making a false statement "intended or likely to deceive [a licensed dealer] with respect to any fact material to the lawfulness of the sale or other disposition of [a] firearm or ammunition under the provisions of this chapter [i.e., Title 18

1

Chapter 44]" pursuant to 18 U.S.C. § 922(a)(6). The indictment alleges she gave a false address and wrongfully denied being an unlawful user of marijuana. The indictment further alleges that she knowingly made a false statement in any matter within the jurisdiction of the executive branch of the Government of the United States," in violation of 18 U.S.C. § 1001(a). Defendant does not challenge that count.

Scheidt has now challenged the constitutionality of the 18 U.S.C. 922(a)(6) charges pursuant to *Bruen* both facially and as applied.  Scheidt also argues the indictment fails to state an offense.  Dkt. 21.

## ARGUMENT

### A. Defendant cannot challenge her guilt or the indictment by attacking the validity of the Form 4473 questions

Defendant argues throughout that the indictment fails to state an offense. An indictment charges an offense if it, among other things, sets out each of the elements of the crime to be charged. *See Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013). It is generally sufficient if the indictment tracks the language of the statute. *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). Defendant does not dispute that her indictment tracks the language of the statute or includes all the elements of the offense. Fed. Crim. Jury Instr. 7th Cir.

922(a)(6) (2022 ed.). The indictment therefore satisfies the requirements in Federal Rule of Criminal Procedure 7.

To the extent Defendant asserts the lies alleged are not material—her address and that she was a regular use of marijuana—an indictment states an offense so long as the facts alleged, if true, form a violation of federal law. *United States v. Nayak*, 769 F.3d 978, 979 (7th Cir. 2014); *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). The misstatements alleged here are, if true, material. *United States v. Queen*, 408 F.3d 337 (7th Cir. 2005) (lie about address can be material); *United States v. Bowling*, 770 F.3d 1168, 1177-78 (7th Cir. 2014) (same); *United States v. Cook*, 970 F.3d 866, 872-78 (7th Cir. 2020) (noting "user" is not unconstitutionally vague and prohibition regarding letting users have firearm implicates important government interest in preventing violent crime); *United States v. Berry*, 60 F.3d 288, 292-93 (7th Cir. 1995) (rejecting challenge to question on 4473 Form about "user" as unconstitutionally vague); *see also, e.g., United States v. Holley*, 526 Fed. Appx. 743, 745 (9th Coir. 2013) (finding lie about being drug user on 4473 Form was material). Defendant is certainly able to argue at trial that the information is not material, but her claim fails at this stage since the indictment alleges an offense. *United States v. Underwood*, 2022 U.S. Dist. LEXIS 51468, **3-4 (N.D. Ind. March 22, 2022) (Brady, J.) ("Factual challenges such as the ones raised

by Defendant test the strength of the Government's case and are not proper challenges to the Indictment itself.").

Relatedly, a large portion of the Defendant's motion is not an attack on § 922(a)(6) but instead a challenge to the questions on the 4473 Form and the records that federal firearms licensees (FFLs) are required to keep. Even if this Court entertains Defendant's Second Amendment challenge to the statute, the Defendant cannot challenge the materiality of the underlying questions to which she provided undisputedly false answers.

A person "who furnishes false information to the Government in feigned compliance with a statutory requirement cannot defend against prosecution for his fraud by challenging the validity of the requirement itself." *United States v. Knox*, 396 U.S. 77, 79 (1969). As the Supreme Court has explained, "it cannot be thought that as a general principle of law a citizen has a privilege to answer fraudulently a question that the Government should not have asked." *Bryson v. United States*, 396 U.S. 64, 72 (1969). "Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them." *Ibid.*

Persons wishing to challenge a firearms regulation on Second Amendment grounds often will file a civil suit invoking federal question jurisdiction. See, *e.g.*, *Kanter v. Barr*, 919 F.3d 437, 440 (7th Cir. 2019) (felon challenging federal and state statutes prohibiting him from owning a firearm),

*abrogated on other ground by Bruen*, 142 S. Ct. at 2111; *Ezell v. City of Chicago*, 651 F.3d 684, 693 (7th Cir. 2011) (firing range facilities supplier challenging ordinance banning ranges in city limits). Here, however, Defendant attempts to invoke the Second Amendment not in a civil suit but instead as a defense to a federal indictment charging that she provided false information on a form required to be kept by FFLs in violation of § 922(a)(6).

There is simply no "privilege to lie in response to an improper interrogation." *Hill v. Murphy*, 785 F.3d 242, 248 (7th Cir. 2015). For this reason, courts have "without exception allowed sanctions for false statements or perjury" even when the defendant alleges "that the Government exceeded its constitutional powers in making the inquiry." *United States v. Mandujano*, 425 U.S. 564, 577 (1976) (plurality opinion) (upholding perjury conviction for statement defendant made to grand jury in alleged violation of Fifth Amendment). One who employs intentional lies "as a means of self-help may not escape the consequences by urging that her conduct be excused because the statute which she sought to evade is unconstitutional." *Dennis v. United States*, 384 U.S. 855, 867 (1966).

*Dennis* well illustrates the rule. There, the defendants, Communist party members, could not raise a First Amendment challenge to their convictions for lying about their party membership on a government form. *Dennis*, 384 U.S. at 866-867. The rule applies regardless of the statute or constitutional

provision at issue. See, *e.g.*, *Kay v. United States*, 303 U.S. 1, 6 (1938) (declining to review claim that Congress lacked constitutional authority to enact the Home Owners' Loan Act of 1933 raised by defendants who made false statements in violation of the act); *United States v. Moore*, 446 F.3d 671, 682 (7th Cir. 2006) (declining to decide if HUD regulation was unconstitutionally vague where defendant intentionally failed to disclose information to HUD); *United States v. Lawton*, 366 F.3d 550, 553-554 (7th Cir. 2004) (declining to decide if 18 U.S.C. §922(n) was unconstitutional where defendant made false statements with respect to firearms records, in violation of 18 U.S.C. § 924(a)(1)(A)); *cf. United States v. Johnson*, 612 F.2d 305, 306 (7th Cir. 1980) (affirming § 922(a)(6) conviction when lie was about felony conviction that was later claimed or shown to have been unconstitutional).

The rule further applies even when Congress requires that, for conviction, a defendant's false statement must be "material." For example, in *United States v. Kapp*, 302 U.S. 214, 215-217 (1937), the defendant was charged with willfully concealing a material fact in violation of the Agricultural Adjustment Act. The district court held the act void and then dismissed the indictment on the ground that "the facts alleged … had ceased to be material because of the unconstitutionality of the provisions." *Id.* at 217 But the Supreme Court reversed, concluding that the defendant could not attack the statute's constitutionality in a false statements prosecution because "Congress

was entitled to protect the government against those who would swindle it regardless of questions of constitutional authority." *Id.* at 218; see also *Bryson*, 396 U.S. at 65 & n.1 (upholding conviction of defendant who lied about Communist party membership for concealing "a material fact" in violation of 18 U.S.C. § 1001).

Thus, Defendant was free to "decline to answer the question or answer it honestly," *Bryson*, 396 U.S. at 72, and then sue if she was denied a firearm on the basis of her response or nonresponse. But she could not knowingly answer the question falsely and once caught raise a constitutional challenge "to the propriety of the very question." *Dennis*, 385 U.S. at 867. Nothing about the Second Amendment would justify granting Defendant an exception to the rule. *Bruen* was designed to subject the Second Amendment to the same "body of rules" as "other Bill of Rights guarantees," and the above caselaw clarifies Defendant cannot assert a right to lie on the 4473 Form. *Bruen*, 142 S. Ct. at 2156.

*United States v. Holden*,[1] on which Defendant predominately relies, misapplied this principle. No. 3:22cr30 (N.D. Ind.) (Dkt. 32). The 4473 Form asks whether the actual purchaser is "under indictment" for a felony. R. 72-1 at 1 (question 11(b)). This is an offense separately punishable under 18 U.S.C.

---

[1] The government has appealed this decision and briefing is ongoing. *See United States v. Holden*, No. 22-3160 (7th Cir.).

§ 922(n). Though Holden lied and said he was not under indictment, Judge Miller held that Section 922(n) facially violated the Constitution and there was no analogous historical regulation. The court then concluded that since § 922(n) was unconstitutional, Holden's lie about his indictment status "was immaterial for purposes of § 922(a)(6)." The court did not find that § 922(a)(6) was unconstitutional, but instead granted relief because it believed Defendant was actually innocent of making a material false statement. This is contrary to the authority above. Even if the underlying question relates to a constitutionally protected right, that "is not a ground for challenging the materiality of [the] alleged false statement under section 922(a)(6)." *United States v. Combs*, 2023 WL 2144150, at \*\*2-3 (E.D.Ky. Feb. 21, 2023).

Put simply, Defendant cannot knowingly lie on the form about a fact that is material and then argue that was okay because the form was unconstitutional. Accordingly, this Court should deny her motion to dismiss since this is not the proper vehicle for her to challenge the materiality of her statement.

## B. Defendant's claim fails on the merits since § 922(a)(6) remains constitutional even after *Bruen*

To the extent this Court considers the Second Amendment's application to § 922(a)(6), Defendant's claim fails on the merits.

8

### 1.    Second Amendment framework

The statute Defendant has been charged with outlaws the following:

> for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter

18 U.S.C. § 922(a)(6).

The Second Amendment provides that:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

Fourteen years ago, the Supreme Court concluded that the Second Amendment confers an "individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). The "central" aspect of this right is the "right to self-defense." *Id.* at 628. The Court noted, however, that "the right secured by the Second Amendment is not unlimited." *Id.* at 626; *see also Bruen*, 142 S. Ct. at 2128 (quoting *Heller*). The Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on … laws imposing

conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27*; see also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010) (quoting the same). In fact, according to the Court, such restrictions are "presumptively lawful regulatory measures" and this list is not exhaustive. *Heller*, 554 U.S. at 627 n.26.

The Court recently elaborated on the framework of Second Amendment analysis in *Bruen*. In that case, the Court analyzed the constitutionality of a New York firearm licensing scheme where an applicant was required to prove that he had "proper cause" to carry a handgun in public for self-defense. *Bruen*, 142 S. Ct. at 2123. The Court struck down the "proper cause" requirement as too subjective and violative of the Second Amendment. *Id.* at 2156.

In reaching this conclusion, the Court laid out the analytical framework for determining whether a firearm regulation is constitutional under the Second Amendment. Courts "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. To make this assessment, a court must engage in a two-prong analysis. First, the court must determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2126. If it does not, the analysis ends, and the Government's regulation is valid.

If the conduct at issue is covered by the Amendment's text, however,

the Government must "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* Only if a firearm regulation is consistent with this Nation's historical traditional may a court conclude that the individual's conduct falls outside the Second Amendment's protections. *Id.* In conducting this historical analysis, the Court recognized that the Government need not present a one-to-one comparison between regulations in existence during Colonial times and those at issue in the present litigation. *Id.* at 2132. Rather, the Government may demonstrate historical acceptance of a regulation by "analogy" to a similar regulation that existed in the Founding Era. *Id.* In this way, the test in *Bruen* only requires a showing of a historical example that is "relevantly similar" to the current regulation; the Government only has to provide evidence of a "representative historical *analogue*, not a historical *twin*." *Id.* at 2132-33 (quotation omitted, emphasis in original). The Court looked at historical precedent before, during, and after the founding. *Id.* at 2131-32.

Applying that standard, the Court held unconstitutional a New York licensing law that allowed an otherwise law abiding applicant to obtain a license to carry a gun outside his home only upon proving "proper cause exists." *Id.* at 2123. First, the Court held the Second Amendment's plain text covered the conduct at issue. *Id.* at 2134–35. The petitioners were "ordinary, law-abiding, adult citizens" who sought to carry handguns publicly for self-

defense. *Id.* at 2134. This, the Court concluded, fell within "the right to keep and bear arms." *Id.* Since the government did not show any applicable historical analogue, the Court found the permissive licensing regime unconstitutional. *Id.* at 2135-56.

The Supreme Court noted, however, that its analysis of New York's discretionary licensing regime did not undermine the constitutionality of 43 states' "shall issue" licensing systems that required no showing of need by the applicants. *Id.* at 2138 n.9. Even though those states had various "narrow, objective, and definite" criteria the applicants had to meet before being given a license to possess a firearm, those criteria were constitutionally permissible because they were "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.; see also Bruen*, 142 S. Ct. at 2161-62 (Kavanaugh, J., concurring) (noting those statutes were "constitutionally permissible" even though they required a "license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among others"). Those statutes could be unconstitutionally applied to an individual applicant and "deny ordinary citizens their right to public carry" if the objective criteria were "put toward abusive ends" and, for example, resulted in "lengthy wait times in processing license applications or exorbitant fees." *Id.* at 2138 n.9. Absent that, however,

licensing laws with those minimal objective criteria were constitutional because they did not "necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." *Id.*

At bottom, the Court noted that New York's statute was unconstitutional, but it continued to recognize the right to carry firearms in self-defense is still "subject to certain reasonable, well-defined restrictions." *Id.* at 2156 (quoting *Heller*, 554 U.S. at 581).

### 2.   Framework for a constitutional challenge

Defendant asserts that § 922(a)(6) is unconstitutional under both a facial and as-applied analysis. Dkt. 72 at 18. Yet the Seventh Circuit has "concluded … that Second Amendment claims cannot rest on a facial overbreadth challenge." *Baer v. Lynch*, 636 Fed. Appx. 695, 697 (7th Cir. 2016) (collecting cases); *see also Bruen*, 142 S. Ct. at 2162 (noting "shall-issue" regimes would be subject to "as-applied challenge" under certain circumstances).

Regardless, the Court should resolve as-applied challenges before facial challenges. *Washington State Grange* v. *Washington State Republican Party*, 552 U.S. 442, 450 (2008). If the statute is constitutional as applied to the Defendant, any facial challenge should fail as the statute will not be unconstitutional in all applications. *United States* v. *Salerno*, 481 U.S. 739, 745 (1987). Defendant flips this argument on its head by suggesting various

questions on the 4473 Form were unconstitutional and therefore all of § 922(a)(6) must be unconstitutional. However, the true inquiry is whether § 922(a)(6) was unconstitutional as applied to Defendant—in other words, whether the Second Amendment allows a purchaser to lie on the 4473 Form about her address and being an unlawful user of controlled substances. Those are the only offenses for which she was charged (rendering irrelevant her reliance on other questions, such as whether the purchaser was under indictment).

### C. Section 922(a)(6) is not unconstitutional because it does not fall within the Second Amendment's plain terms

To the extent Defendant raises some challenge to § 922(a)(6), it fails at the first step of the *Bruen* analysis because the text of the Second Amendment does not cover her conduct or the statute to which she is charged. This is because: (a) the licensing requirement that defendant violated does nothing to "infringe[ ]" on the right to bear arms; and (b) the Defendant was not a responsible, law-abiding citizen whose right to bear arms is protected by the Second Amendment.  This analysis alone takes this case outside of *United States v. Holden*, upon which Defendant relies and in which the Court presumed without analysis that Holden's conduct was "protected by the Second Amendment." No. 3:22-cr-30 (N.D. Ind. Oct. 31, 2022) (Dkt. 32 at 6). Instead, this Court should agree with every district court the government is

aware of to decide the issue and find § 922(a)(6) remains constitutional after *Bruen*. *See United States v. Soto*, 2023 WL 1087886 (W.D. Tex. Jan. 27, 2023) (finding § 922(a)(6) constitutional); *United States v. Tilotta*, 2022 WL 3924282 (S.D. Cal. Aug. 30, 2022).

### 1.    Section 922(a)(6) does not "infringe[ ]" on the Second Amendment rights

First, the Second Amendment only proscribes laws that "infringe[ ]" on the protected right to "keep and bear Arms." Nothing in § 922(a)(6) infringes that right. *See, e.g.,* Webster's 1828 American Dictionary of the English Language (defining "infringe" as "[t]o break; to violate; to transgress" and "[t]o destroy or hinder").

Rather, § 922(a)(6) was not enacted to prohibit individuals from possessing firearms for the lawful purpose of self-defense, but instead it prohibits a potential purchaser from *making a false statement* to a firearms dealer in connection with a firearms purchase. The Second Amendment right to keep and bear arms "doesn't give a person the right to lie to acquire a firearm." *Graham v. United States*, 2012 WL 6111852 (N.D. Ind. 2012). Stated another way, "the 'conduct' prohibited under § 922(a)(6) is knowingly making a false or fictitious oral or written statement" and that "conduct falls outside the conduct protected by the Second Amendment, that is to 'keep' and 'bear' arms—or as *Heller* established, to 'have' and 'carry' weapons." *United*

*States v. Soto*, 2023 WL 1087886, at *3 (W.D. Tex. Jan. 27, 2023).

Indeed, the Supreme Court signaled that its recent Second Amendment decisions do not implicate the "presumptively lawful" category of "laws imposing conditions and qualifications on the commercial sales of arms." *Heller*, 554 U.S. at 626-627 & n.26 (observing that "laws imposing conditions and qualifications on the commercial sales of arms" are "presumptively lawful regulatory measures"); *cf. Bruen*, 142 S. Ct at 2138 n.9 ("[N]othing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States 'shall issue' licensing regimes, *** which often required applicants to undergo a background check or pass a firearms safety course."); *id* at 2157 (Alito, J., concurring) (explaining that *Bruen* does not "disturb[]" *Heller*'s statements "about restrictions that may be imposed on the possession or carrying guns"); *id*. at 2162 (Kavanaugh, J., concurring) (finding that "shall-issue licensing regimes are constitutionally permissible" and may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling). *See Huddleston v. United States,* 415 U.S. 814, 824-25 (1974) (regulatory scheme "was enacted as a means of providing adequate and truthful information about firearms transactions"); *see also Abramski,* 573 U.S. at 188 (similar regulatory scheme to ensure the "lawfulness of a gun sale" and that the dealer has sufficient information to check the "true purchaser's identity and

eligibility for gun ownership"). Section 922(a)(6) is part of that regulatory scheme.

Unlike the court's conclusion in *Holden*—that it unconstitutionally infringes upon a Second Amendment right to regulate firearm receipt while under indictment—Defendant has not identified how asking about the purchaser's current address or her drug use restricts her Second Amendment right to possess a firearm. She claims that asking people their identity and current address "is not material transferee information under Chapter 44." Dkt. 21 at 21. That is both wrong, *see Queen*, 408 F.3d 337, and irrelevant to the Second Amendment inquiry. The question does not prevent Defendant from obtaining a firearm. That question—and the requirement that the FFL keep the identifying information of the true purchaser—does not restrict a purchaser's right to own a firearm since it is merely questions consistent with the "commercial sales of arms." *Heller*, 554 U.S. at 626-627 & n.26. Rather, it is her lie that matters.

In short, nothing about § 922(a)(6) prohibits Defendant from procuring a firearm. It prohibits her from lying on ATF forms while buying guns. This is not an infringement on her rights.

**2.      Regardless, Defendant is not a law-abiding citizen**

Regardless, Defendant is not a law-abiding citizen whose right to bear arms is protected by the Second Amendment. As the Supreme Court has made

clear, the Second Amendment protects the right of "law-abiding citizens" who may bear firearms for "lawful purposes." *Heller*, 554 U.S. at 625; *accord Bruen*, 142 S. Ct. at 2122 (the Second Amendment right is limited to "law-abiding" citizens seeking to execute a lawful purpose). Here, Defendant was not acting as a law-abiding citizen; she was law-evading.

She made materially false statements on the ATF form when she sought the firearms. She lied about her address and denied being an unlawful user of controlled substances. If she would have answered truthfully, the licensed firearms dealers would not have sold her the firearms. *See Queen*, 408 F.3d at 338 ("an incorrect street address on an ATF 4473 Form is material"). In other words, the very inception of the transaction involved a materially false statement, rendering Defendant no longer a law-abiding citizen. Moreover, she was not a law-abiding citizen when she used marijuana.

While the federal restriction against lying on the 4473 Form will prevent some people from being able to buy firearms, that impact is similar to that of the "shall issue" licensing regimes of *Bruen*, which set up objective criteria that must be met before lawfully possessing a firearm. Those objective criteria were in place "to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *Bruen*, 142 S. Ct. at 2138 n.9. The 4473 Form accomplishes the same goals. In fact, in addition to requiring the buyer's name, some of those "shall issue" regimes require the

buyer to provide her address when applying for the license and some even put the address on the permit itself.[2] Given those criteria were permissible under *Bruen*'s analysis, it should be equally permissible under § 922(a)(6) and demonstrate how Defendant is not law-abiding such that her lies are entitled to Second Amendment protection.

Even those courts that have interpreted the Second Amendment's protections as expanding beyond "law-abiding citizens" have nevertheless acknowledged that the Supreme Court's use of the phrase "law-abiding, responsible citizens" was meant as a "shorthand in explaining that its holding … 'should not be taken to cast doubt on longstanding prohibitions.'" *United States v. Rahimi*, --- F.4th ----, 2023 WL 1459240, *4 (5th Cir. 2023) (quoting *Heller*, 554 U.S. at 626-27. One of those prohibitions includes "laws imposing

---

2 *Bruen*, 142 S. Ct. 2111, 2123 n.1 (listing regimes); *see* Alaska Stat. §13A-1175 (incorporating § 18.65.170); Colo. Rev. Stat. § 18-12-106 (incorporating § 18-12-205(1)(a)(I)); Fla. Stat. § 790.06(4)(a); Idaho Code § 18-3302(K)(2)(a); 403 ILCS § 66/10(a)(2) (incorporating § 66/30(b)(1)); Ind. Code § 35-47-2-3(e); Iowa Code § 724.7(1) (incorporating § 724.10(1)); Kan. Stat. Ann. § 75-7c03(b); Ky. Rev. Stat. § 237.110(7)(e)(1)(a); La. Stat § 40:1379.3(A)(1); *id.* § (c)(1)(a) (change of address); Me. Rev. Stat. § 2003(1)(D)2); MCLS § 28.425b(1)(a); Minn. Stat. § 624.714(3)(a)(1); Miss. Code § 45-9-101(4)(a); Mo. Rev. Stat. § 571.101(3)(1); Neb. Stat § 69-2430(1); Nev. Rev. Stat. § 202.3657(7)(a); N.H. Stat. § 159:6(I)(b); N.D. Code § 62.1-04-03(6); Ore. Stat. § 166.291(3)(a); 18 Pa. Stat § (e)(3)(i); S.C. Code § 23-31-215(E)(8); S.D. Code § 23-7-7 (incorporating § 23-7-7-1.(6)); Tenn. Code § 39-17-1366(f)(1); Tex. Code § 411.174(b)(3); Utah Code § 53-5-704.5(4)(a); Va. Code § 18.2-308.04(E); Wash. Code § 9.41.070(4); W.Va. Code § 61-7-4(i); Wyo. Stat § 6-8-104(d)(i). Others have residency requirements, which by their nature similarly would require truthful information relating to address and the actual purchase. Ala. Code § 13A-11-75(a) ("an Alabama resident"); Ark. Code. § 5-73-309(2)(A); Ga. Code § 16-11-129(a)(1); *id.* § (e)(4) (steps for change in address); Mont. Code § 45-8-321(1); N.M. Stat. § 29-19-4(A)(2); Ohio Rev. Code § 2923.125(B) (setting our procedures based on residency); *id.* § (F)(4) (fees based on residency); 21 Okl. St. § 1290.12(A)(7) (requiring State ID); *See also* N.C. Gen. Stat. § 14-415.11(d) (requiring notice of change of address).

conditions and qualifications on the commercial sale of firearms." *Heller*, 554 U.S. at 626-27. Section 922(a)(6) is such a restriction.

Second, since Defendant's challenge must be considered as-applied, she was also not law-abiding since she regularly smoked an illegal controlled substance (marijuana) while attempting to obtain those firearms. Someone who is an "unlawful user of a controlled substance" is not a law-abiding citizen and the restrictions in § 922(a)(6) do not therefore infringe on Scheidt's right to own firearms, so the statute is not unconstitutional as applied to her. *See United States v. Posey*, 2023 WL 1869095, (N.D. Ind. Feb. 9, 2023) (DeGuilio, C.J.) (rejecting challenge to § 922(g)(3)). *United States v. Seiwert*, 1:20-cr-443 (N.D. Ill. Sept. 28, 2022) (Dkt. 89 at 4) (same). This restriction on unlawful individuals is "similar to regulations aimed at preventing dangerous or untrustworthy persons from possessing and using firearms" and have a long history whose enforcement remain valid today. *United States v. Seiwert*, 1:20-cr-443 (N.D. Ill. Sept. 28, 2022) (Dkt. 89 at 4-5); *see also United States v. Daniels*, --- F. Supp. 3d ----, 2022 WL 2654232 (S.D. Miss. July 8, 2022) (rejecting *Bruen* challenge to § 922(g)(3)).

The defendant's contention that a subsequent Presidential pardon for individuals that committed the offense of simple possession of marijuana in violation of 21 U.S.C. 844 somehow entitled Defendant to lie on her 4473 months prior to the pardon being issued is not supported by the text within

the pardon.  "My intent by this proclamation is to pardon only the offense of simple possession of marijuana in violation of Federal law or in violation of D.C. Code 48-904.01(d)(1), and *not any other offenses related to marijuana or other controlled substances."*  Pardon for the Offense of Simple Possession o Marijuana, 87 Fed. Reg. at 61441 (emphasis added).  The Defendant is not charged with being a possessor of a controlled substance, as the indictment charges Scheidt with being a user, which is outside the "text of the pardon itself," which "expressly limits its effect to pardoning violations of 21 U.S.C. § 841" and a similar D.C. law. *Posey,* 2023 WL 1869095, at *4 (rejecting identical challenge)

The argument is also contrary to the established body of law holding that pardons preclude further punishment for the pardoned offense but "*do not* erase the underlying conduct of that offense." *Id.* (emphasis in original); *see also Hirschberg v. Commodity Futures Trading Comm'n*, 414 F.3d 679, 682-83 (7th Cir. 2005) ("The question we must answer, then, is whether the CFTC's denial of Hirschberg's registration is impermissible punitive action *or simply a consequence of the conduct underlying the conviction that the pardon could not erase.*") (emphasis added); *United States v. Flynn*, 507 F.Supp.3d 116, 136 (D.D.C. 2020) (holding a pardon cannot "erase a judgment of conviction, or its underlying legal and factual findings.") (internal citations omitted); *United States v. McMichael*, 358 F.Supp.2d 644, 647 (E.D. Mi.

2005) ("A [presidential] pardon does not entail the expungement of judicial records or otherwise negate the facts of the underlying conviction.") (citing *United States v. Doe*, 556 F.2d 391 (6th Cir. 1977)).  The pardon did not legalize marijuana and it remains a controlled substance, therefore it is inaccurate to claim that marijuana use was no longer punishable conduct given the President only forgave two specific contentions related to marijuana possession.  Put simply, "the pardon did not attempt to effect any change upon the firearms laws of the United States and has no bearing on how the *Bruen* analysis is applied." *Posey,* 2023 WL 1869095, at *5.

Again, this restriction is similar in impact to the "shall issue" licensing regimes of *Bruen*, which set up objective criteria that must be met before lawfully possessing a firearm. Those objective criteria were in place "to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *Bruen*, 142 S. Ct. at 2138 n.9. Defendant does not explain why a state can compel individuals to submit to background checks or be trained in use-of-force laws but cannot require that same citizen to truthfully fill out a licensing form before she can obtain a firearm. The Government can impose regulations to identify which individuals may lawfully possess firearms.

### D. The provisions of 18 U.S.C. § 922(a)(6) coincide with historically-imposed firearm regulations

Even if the Defendant's conduct was covered by the text of the Second Amendment, her challenge still fails because there have been proscriptions on the commercial sale and transport of firearms since the Founding Era that are identical or, at least "relevantly similar," to the current regulation. *Bruen*, 142 S. Ct. at 2132-33. Courts have recognized that "colonial governments substantially controlled the firearms trade."[3] *Teixeira v. City of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017). For example, "a 1652 New York law outlawed illegal trading of guns, gun powder, and lead by private individuals. A 1631 Virginia law required the recording not only of all new arrivals to the colony, but also 'of arms and munitions' ... In the 1800s, three southern states imposed taxes on personally held firearms." Robert Spitzer, *Gun Law History in the United States and the Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 76 (2017); *see also* Meg Penrose, *A Return to the States' Rights Model: Amending the Constitution's Most Controversial and Misunderstood Provision*, 46 Conn. L. Rev. 1463, 1483 (2014) ("The Founders would likely challenge the notion that the government could not register weaponry or prohibit gun

---

3 States continued to enact laws that "dealt broadly with manufacturing, inspection, and sale of weapons," including "the manufacture, sale, [and] transport" of gunpowder, in the 18th and 19th centuries. Spitzer, "Gun Law History," 80 Law & Contemp. Probs. 74. For example, in 1814, "Massachusetts required that all musket and pistol barrels manufactured in the state be first tested or 'proved' to insure that they could withstand the firing process without rupturing." *Ibid.* During the same time period, "New Hampshire created and appointed state gunpowder inspectors to examine every storage and manufacturing site." *Ibid.*; *see id.* at 74 n.125.

ownership. Unlike modern Americans, the founding generation endured mandatory gun registration as a basis for ensuring a functional militia, and routinely disarmed those considered threatening to the established social order."); *Minutes from a Convention of the Federalist Society: Civil Rights: The Heller Case*, 4 NYU J.L. & Liberty 293, 309 (2009) ("[T]he Founders did have gun control. They had mandatory musters. Everyone with a gun had to show up and register their firearm").

Similarly, in the early 17th century, Connecticut banned residents from selling firearms outside the colony. *Teixeira*, 873 F.3d at 685. Virginia likewise provided that people were at "liberty to sell armes and ammunition to any of his majesties loyall subjects *inhabiting this colony*." *Id.* at 698 (emphasis added). And other colonies "controlled the conditions of trade" in firearms. *Id.* at 685. Further, and consistent with this Founding Era tradition, States continued to enact laws governing "the manufacture, sale, [and] transport" of guns and ammunition in the 18th and 19th centuries. *Spitzer,* 80 Law & Contemp. Probs. at 74.

In *Heller*, the Supreme Court specifically provided that its ruling would not call into question regulations on the "commercial sale of arms." *Heller*, 554 U.S. at 627. This example was included in a laundry list of "longstanding" prohibitions that were to be considered "presumptively valid" because of the historical recognition and vintage. *Id.* at 626. And the Court noted that its list

24

was not exhaustive. Section 922(a)(6) is clearly a statute affecting, and relating to, the commercial sale of firearms and such regulations were consistent with laws then in existence during the relevant periods.

In sum, historical sources demonstrate a wide panoply of laws from the Founding Era which required firearm "registration" and which heavily regulated the sale and transfer of firearms. These are historical analogues to the current ATF Forms, which are necessary to, and in aid of, modern legislative schemes regulating the commercial sale of firearms. Even if this Court finds that these are not "distinctly similar historical regulation[s]," *Bruen*, 142 S. Ct. at 2131, it should nevertheless conclude that § 922(a)(6) is "analogous enough to pass constitutional muster." *Id.* at 2133.

**Conclusion**

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss.

Respectfully submitted,
CLIFFORD D. JOHNSON
UNITED STATES ATTORNEY

By:    *s/Brent A. Ecenbarger*
Brent A. Ecenbarger
Assistant United States Attorney
1300 S. Harrison St
Suite 3128
Fort Wayne, Indiana
Phone: (260) 937-5500
E-mail:  brent.ecenbarger@usdoj.gov