UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA    )<br>                                                          )<br>            Plaintiff,                          )<br>                                                          )<br>v.                                                       )         CASE NUMBER:    1:22-CR-49<br>                                                          )<br>ECHO A. SCHEIDT                      )<br>                                                          )<br>            Defendant.                        ) | |

**REPY BRIEF IN SUPPORT OF THE
MOTION TO DISMISS COUNTS 1-5 OF THE INDICTMENT**

COMES NOW Defendant Echo A. Scheidt, by her counsel Michelle Kraus, files this reply brief in support of dismissal of counts 1-5 of the indictment against her on the grounds that 18 U.S.C. § 922(a)(6) is unconstitutional and because the indictment fails to state an offense under Rule 12(b) of the Federal Rules of Criminal Procedure.

Introduction

The government advances three primary arguments in opposition to the Ms. Scheidt's motion dismiss counts 1-5: that Ms. Scheidt "cannot challenge her guilt or the indictment by attacking the validity of Form 4473 questions [,]" ECF No. 23, p. 2, that Ms. Scheidt's "claim fails on the merits since § 922(a)(6) remains constitutional even after Bruen[,]" *id.* at p. 8, "Section 922(a)(6) is unconstitutional because it does not fall within the Second Amendment's plain terms" *id.* at p. 14, and that § 922(a)(6) provisions "coincide with historically-imposed firearm regulations." *Id.* at p. 22.  All fail. The Court should dismiss counts 1-5 under the Second Amendment and the *Bruen* analytical framework and because those counts fail to state a criminal offense under Rule 12(b)(3) of the Federal Rules of Criminal Procedure.

## I. The government misconstrues Ms. Scheidt's Argument.

Section 922(a)(6) is not a general fraud or misrepresentation statute. Rather, the statute criminalizes the specific act of "knowingly to make any false or fictitious oral or written statement . . . likely to deceive [a firearms] importer, manufacturer, dealer, or collector with respect to any *fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter*." § 922(a)(6). The government argues that Ms. Scheidt cannot challenge her guilt by attacking the validity of the Form 4473 and it further argues that "[a] person who furnishes false information to the Government in feigned compliance *with a statutory requirement*" may not "defend against prosecution for his fraud by challenging the validity of the requirement itself." ECF No. 23 at p. 4 (emphasis added) (internal citations omitted). Ms. Scheidt's argument is that the marijuana "use" information as alleged by the government in counts 1-5 is not a statutory requirement – is not material to the sale of a firearm under chapter 44, which exclusively defines § 922(a)(6)'s scope. Ms. Scheidt is not charged under a general fraud statute that criminalizes any form of dishonest representation or any proffer of misrepresented information.

Other federal statutes may sweep as broadly to cover any intentional misrepresentation, but not the challenged statute here. *See* 18 U.S.C. § 1001(a) (emphasis added) ("Except as otherwise provided in this section, whoever, *in any matter* within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry."). The government's case citations, *see* ECF No. 23 pp. 2-8, on this issue address general proscriptions, but not the scope of material facts and required information *under the firearm*

*chapter*. In that way, the regulation of materiality as to a firearm sale under § 922(a)(6) is narrow and a person's misrepresentation meaningless unless the information relates to the firearm chapter's requirements. In essence, § 922(a)(6) is *sui generis* while the government's case citations on the issue deal with general perjury and information proscriptions. To the extent the government's offers a general proscription against lying, the cases proffered do not address the narrow statutory scope under the challenged statute here.

To that end, the government's offer of *Kapp* is unavailing. *See* ECF No. 23 at p. 6. Ms. Scheidt is not attempting to swindle the government or secure payment from the federal government, but to be left free from government intrusion of her Second Amendment rights. *See United States v. Kapp*, 302 U.S. 214, 217 (2014) ("It is cheating the government at which the statute aims, and Congress was entitled to protect the government against those who would swindle it regardless of questions of constitutional authority as to the operations that the government is conducting."). The purpose of the firearm chapter is not motivated or targeted to prevent a person from cheating the government or fraudulently obtaining a government case benefit, as was the issue in *Kapp*, but to prevent crime and aid law enforcement in combatting crime. Further, *Bruen* established the exclusive framework for assessing a firearm's continued constitutionality. *Kapp*, and other cases cited by the government, antedate *Bruen* by nearly 90 years or in multiple decades. Accordingly, *Bruen* guides this Court's analysis, not inapposite case law addressing different statutory and regulatory contexts.

In addition, the government claims that "Defendant cannot knowingly lie on" Form 4473 "about a fact that is material and then argue that was okay because the form was unconstitutional." ECF No 23, p. 8. However, as discussed at length in Ms. Scheidt's opening brief, "user" as defined on Form 4473 is not readily ascertainable. Further, the C.F.R.'s concept of controlled substance

"user," referenced in Form 4473 (including marijuana), is equally unknowable to the person completing Form 4473:

> Unlawful user of or addicted to any controlled substance.  A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician.  Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm.  An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year.

27 C.F.R. § 478.11.

In effect, nearly any pervious marijuana "use" within the last five years, under the Form and the attendant C.F.R. could conceivably render a person a marijuana user.  Furthermore, and more importantly the C.F.R. and Form 4473 "user" is not controlling.  Materiality as to a firearm sale under § 922(a)(6) is governed and relates exclusively to the firearm chapter, not Form 4473.  To that end, the firearm chapter defines "unlawful user of or addicted to any controlled substance" under 21 U.S.C. § 802; *see also* 18 U.S.C. § 922(g)(3).  Applying that statutory standard, the term user is not readily defined and "[t]he term "addict" means any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction."  § 802.  From this limited construction, the executive branch, through the C.F.R. has expanded the standard of controlled substance use.  In effect, what the firearm chapter defines as material regarding marijuana use is at odds with Form 4473 and the corresponding C.F.R.  As

alleged, the indictment as to counts 1-5 does not demonstrate, even assuming the allegations raised are true, that Ms. Scheidt's alleged use of marijuana renders her a "user" under the firearm chapter.[1] Counts 1-5 may track Form 4473's standard of marijuana use, but not the applicable and requester chapter 44 standard. As a result, the Court should dismiss counts 1-5 of the indictment.

## II.   Section 922(a)(6) fails the *Bruen* test.

### A.  Section 922(a)(6) falls within the Second Amendment's textual protections.

Here, because the Second Amendment's plain text covers Ms. Scheidt's conduct and implicates any individual's right to possess a firearm for self-defense, "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2129, 2130. Section 922(a)(6) restricts who may own a firearm, by conditioning receipt to materiality requirements, and here has potentially criminalized Ms. Scheidt's possession based on the materiality provision. Fundamentally, the challenged statute interferes if not burdens the right to possess a firearm for among other things, self-defense within the home. This restriction subjects the challenged statute to Second Amendment review.

Citing *Salerno*, the government claims that Ms. Scheidt is foreclosed from raising a facial challenge to the challenged statute here. *See* ECF No. 23, p. 13 (government averment that "[i]f the statute is constitutional as applied to the Defendant, any facial challenge should fail as the statute will not be unconstitutional in all applications. *United States v. Salerno*, 481 U.S. 739, 745 (1987)."). That is no longer the state of the law. *See e.g.*, *Johnson v. United States*, 135 S. Ct. 2551, 2561 (2015) (Supreme Court "holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's

---

[1] Ms. Scheidt contests any assertion by the government that her "use" of marijuana has been conclusively established or that she conclusively lied on Form 4473. *See* ECF Nos. 23, pp. 8, 20. A petit jury will decide issues of fact if the instant motion to dismiss is denied as to the relevant counts.

grasp. . . . [The Court's] decisions refute any suggestion that the existence of some obviously risky crimes establishes [a statute's] constitutionality.); *see also Rahimi*, ---- F.4th ----, 2023 WL 2317796, pp. *5-6 (emphasis added) ("[t]he Government contends that Rahimi must establish that no set of circumstances exists under which the Act would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987). Rahimi contests that assertion asserting during oral argument that the Government's interpretation of *Salerno* has fallen out of favor, though he contends that in any event, he has satisfied *Salerno's* standard. *Bruen instructs how to proceed*.").

Accordingly, the test set forth in *Bruen* is how a reviewing court is to adjudicate a challenge to a contested firearm regulation under the Second Amendment. Not *Salerno*. In addition, the government misconstrues Ms. Scheidt's facial argument. Ms. Scheidt is arguing that the challenged statute is unconstitutional under any factual scenario as it always conditions receipt and possession of a firearm, and imposes criminal sanction, based on impermissible materiality and information requirements. *See, e.g., United States v. Reyna*, 21-cr-41, 2022 WL 17714376, p. *2 (N.D. Ind. Dec. 5, 2022, Judge Miller) (reasoning that a facial challenge to 18 U.S.C. § 922(k) (obliterated serial number) may proceed under *Bruen*); *See also City of L.A. v. Patel*, 576 U.S. at 415, 135 S. Ct. 2443 (establishing a facial challenge may be raised under the Second Amendment consistent with *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L.Ed.2d 637 (2008)).[2]

---

[2] Ms. Scheidt, remains part of the "the people" the Second Amendment protects. To date, no circuit court has adopted the government's assertion on this issue of Second Amendment scope. Like other constitutional provisions, the Second Amendment does not and should not hinge on whether a person is an "*ordinary, law-abiding, and adult citizen[]*." *Bruen*, S. Ct. 142 at 2134 (emphasis added); *see also United States v. Hicks*, W:21-CR-00060-ADA, 2023 WL 164170, p. *3 (W.D. Tex. Jan. 9, 2023):

> [L]ike Justice Stevens noted in his *Heller* dissent, if "the people" is restricted to "law-abiding, responsible citizens," and "the people" means the same group in the First and Fourth Amendments—like Justice Scalia reasoned in *Heller*—those other constitutional protections are endangered. Indeed, the class of persons protected by the First and Fourth

B. *The government fails to satisfy the Bruen history test.*

Because Ms. Scheidt's conduct is protected by the Second Amendment, the burden shifts to the government to show the challenged firearm regulation is consistent with the nation's history and tradition of firearm regulation. *See Bruen*, 142 S. Ct. at p. 2129-31. The "[g]overnment bears the burden" of "*affirmatively prov[ing]* that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127 (emphasis added). The government falls far short of satisfying its affirmative burden of proof.

The government argues that it need only show a "relevantly similar" historical analogue, but also appears to be arguing that the challenged statute is part of a long-standing tradition and history of firearm proscriptions of the commercial sale of firearms "since the Founding Era . . . ." ECF No. 23, at p. 11. Considering the government is arguing that the challenged statute is part or a continuation of a long-standing tradition of the regulation of firearm sales, from the founding era firearm tradition, the standard is not "relevantly similar" but a more exacting "distinctly similar:"

> The point made by the defendants is that the "distinctly similar" standard is more demanding than the "relevantly similar" standard. . . . . [T]he court concludes, upon careful reading of that opinion, that [*Bruen*] does articulate two standards for assessment of the government's proffered historical analogues, depending on whether the challenged regulation addresses a general societal problem that has persisted since the 18th century or whether the statute addresses unprecedented societal concerns or dramatic technological changes. In the former case, the Court tells us that the lack *of a distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. On the other hand, under the more lenient standard, reasoning by analogy in aid of a determination of whether the two regulations are relevantly

---

Amendments is not so limited; for even felons (and presumably irresponsible citizens as well) may invoke the protections of those constitutional provisions. Taking Justice Stevens' argument further, defining "the people" as law-abiding, responsible citizens would lead to absurd results. The Government surely doesn't believe that someone ticketed for speeding—thus, not abiding by the law—should lose their Second Amendment rights. Nor should the person who negligently (irresponsibly) forgets to set out the "Wet Floor" sign after mopping lose their Second Amendment rights. Of course not. Whether intended or not the absurd consequences are there all the same.

similar is permissible.

*United States v. Lewis*, No. CR-22-368-F, 2023 WL 187582, at *3 (W.D. Okla. Jan. 13, 2023). [3]

Under the more exacting distinctly similar standard, the government's proffered history falls far short. Indeed, the paucity of historical sources proffered by the government lay bare that the challenged statute does not satisfy the *Bruen* test. First, the challenged statute is not mere "commercial regulations." Definitionally, § 922(a)(6) is identified by Congress not as a relating to commercial sales but is part of the firearm chapter defined as "Unlawful acts." *See generally* 18 U.S.C. § 922. The challenged statute is a criminal enforcement provision, not a sales or licensing provision.

Next, the government's proffered historical sources offer no relationship to the challenged statute. The government claims that "three southern states" imposed taxes on "personally held firearms." ECF No. 23 at p. 23. Aside from not knowing which southern states are referred to, the challenged criminal statute is not a tax on firearm possession. *Compare* Title 18 *with* Title 26 of the United States Criminal Code. The government makes no reference as to whether these post-founding era southern states criminalized possession of a firearm, criminalized conduct at all, imposed civil sanctions, or whether the statute criminalized conduct consistent with the indictment as alleged against Ms. Scheidt. The government cites to a New York Law in 1652, nearly 140 years before the founding, that "outlawed illegal trading of guns, gun powder, and lead by private individuals" ECF No. 23 at p. 23 but does not offer the text of the statute. In fact, it appears that the text of the law is no longer extant. *See* Duke Firearm Repository, *1652 N.Y. Laws 128 Ordinance of the Director and Council of New Netherland Against Illegal Trade In Powder, Lead*

---

[3] Importantly, this analysis "does not mean that courts may engage in independent means-end scrutiny under the guise of an analogical inquiry." *Bruen*, 142 S. Ct. at 2133 n.7.

8

*And Guns In New Netherland By Private Persons,* https://firearmslaw.duke.edu/laws/1652-n-y-laws-128-ordinance-of-the-director-and-council-of-new-netherland-against-illegal-trade-in-powder-lead-and-guns-in-new-netherland-by-private-persons/ (last accessed Mar. 8, 2023) (exact text lost). In effect, this temporally attenuated source cannot be relied upon as a viable historical citation. *See Bruen*, S. Ct. 142 at 2136 (emphasis added) (reasoning that as understood in 2023, the Second Amendment protects rights that are "enshrined with the scope they were understood to have *when the people adopted them*" and history substantially antedating ratification is not presumptively credible history under the *Bruen* framework).

The government cites a 1631 Virginia law, which "required the recording not only of all new arrivals to the colony, but also 'of arms and munitions" *see* ECF No. 23 at p. 23, however, whether the law imposed materiality restrictions or limited, like here, who and on what basis a person could possess a firearm is not at all known or whether the law imposed restrictions of firearm sales consonant with the challenged statute here *before* firearm possession is equally unknown. That Virginia in 1631, required recording of firearms is far from restricted who and why a firearm could or could not be possessed. Further, that the same 1631 Virginia law restricted all trade, ostensibly including firearm transfers, with Native Americans demonstrates that the proffered Virginia law was not a mere commercial regulation, but a law targeting sovereign and political rivals to the nascent colonial government –not at all the purpose of the firearm chapter today. *See* The Statutes at large; being a collection of all the laws of Virginia, February 1631-2, p. 173 (available at https://ia800203.us.archive.org/22/items/statutesatlargeb01virg/statutesatlargeb01virg.pdf (last accessed Mar. 8, 2023). Simply, the government's oblique reference to a colonial law, passed 160 years before the founding is insufficient to carry its burden here. Further, the government

cites to an early "17th century (1600s) [law] [in Connecticut [which] banned residents from selling firearms outside the colony." ECF No. 26, at p. 24. In addition, the early 1600 Connecticut law, again passed ostensibly nearly 200 years before the 1791 founding, addressed sales generally and not materiality as to firearm sales whether it imposed comparable penal sanction as here is not at all known. The government's proffered history falls far short of satisfying its *Bruen* burden.

Finally, because the Second Amendment is not treated as a second-class right relative to other Bill of Rights protections post-*McDonald*, the Court in *Bruen* was careful to clarify that ambiguities as to a historical provision are resolved in favor of the claimant or challenger of the firearm restriction under the Second Amendment. *See Bruen*, S. Ct. 142 at 2141. Applying any ambiguity here, the Court should rule in favor of Ms. Scheidt's challenge.

## Conclusion

Ms. Scheidt asks that the Court grant her motion to dismiss counts 1-5 of the indictment.

*Date*: March 10, 2023

                               Respectfully submitted,

                               Northern District of Indiana
                               Federal Community Defenders, Inc.

                               By:   s/ Michelle F. Kraus
                                           Michelle F. Kraus
                                           200 East Main Street
                                           Ft. Wayne, Indiana 46802
                                           Phone: (260) 422-9940
                                           Email: Michelle_Kraus@fd.org

**CERTIFICATE OF SERVICE**

  I hereby certify that, on <u>March 10, 2023</u>, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all parties of record.

                  <u>s/ Michelle Kraus</u>