UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:22-CR-49 |
| | ) | |
| ECHO A. SCHEIDT | ) | |

<u>SENTENCING MEMORANDUM</u>

Comes now the United States of America, by its counsel, Clifford D. Johnson, United States Attorney for the Northern District of Indiana, through Brent A. Ecenbarger, Assistant United States Attorney, and files its Sentencing Memorandum. For the reasons set forth below, the government requests this Court sentence the defendant, Echo A. Scheidt, to a term of 18 months of imprisonment (total) for Counts 1 through 6 of the indictment.

## I.    The Offenses

Scheidt has pleaded guilty to all counts of the Indictment pending against her, charging her with five counts of making a false and fictitious statement to a licensed dealer of firearms and one count of making a false statement during a federal criminal investigation. Law enforcement began scrutinizing Scheidt's firearm purchases after one of the firearms she purchased was found on the person of the multi-convicted felon apprehended for murdering an Elwood Police Department officer on July 31, 2022.  The felon

had two guns on his person, one that was used to murder the officer, and a second that had been purchased 149 days earlier by Scheidt.  Following this event, ATF agents checked Scheidt's firearms purchases, and determined that another firearm purchased by Scheidt was linked to a shooting in Marion, Indiana, a mere 112 days after she had purchased it.

A search of local firearms dealers revealed that, between February of 2022 and April of 2022, Scheidt had purchased the following firearms:

1. Hi-Point pistol, model SF 380, serial number P8041164, purchased on February 6, 2022;

2. Taurus pistol, model PT111 G2A, 9mm, serial number 1C082510, purchased on February 20, 2022 (tied to a shooting in Marion);

3. Taurus pistol, model G2C, 9mm, serial number CAN732207, purchased on March 4, 2022 (recovered from the individual arrested for the murder of the Elwood police officer);

4. Walther pistol, model PK380, serial number WB110768, purchased on March 10, 2022;

5. Smith & Wesson pistol, model MP 40 Shield, serial number HSB6869, purchased on March 19, 2022; and

6. Hi-Point pistol, model C9, serial number P10157804, purchased on April 5, 2022.

Scheidt purchased these firearms from various federally licensed firearms dealers. To complete each purchase, Scheidt completed a Firearms Transaction Record (also known as a 4473 form), which admonished her that all information on the form should be true, correct, and complete and that lies could be prosecuted as a felony offense under federal law. Scheidt listed her address as being in Upland, Indiana, on the February 20, 2022, firearms purchase, and as being a particular address on Euclid Avenue in Marion, Indiana, for the other five purchases.

ATF investigators attempted to interview Scheidt the same day that the police officer was killed in Elwood, Indiana. Investigators first tried the Upland address listed by Scheidt on the February 20th form, finding the residence to be long abandoned. Officers next tried two addresses on Euclid Avenue, one being the address provided by Scheidt on the rest of the 4473 forms and the other being a similar address located adjacent to her listed address. The occupants of both addresses confirmed Scheidt did not reside at that location, and one believed Scheidt had not resided on Euclid Avenue since approximately 2017.

ATF investigators obtained a cell phone number for Scheidt and were able to interview her later that day. Scheidt provided her address as being in Lawrenceburg, Indiana, and stated she had resided there for a year and a half.

3

Prior to that, she resided on "Miller Ave" from 2017 to 2019. Scheidt later clarified that she lived in Upland, Indiana, from August 2020 to May of 2022.

Scheidt attributed her false address on the 4473 forms to matching the only identification she had on her at the time of purchase. During this first interview, Scheidt also admitted to being a regular marijuana user for the past twenty years. This revelation established that she had been untruthful to form 4473's question about not being an unlawful user of, or addicted to marijuana or any other controlled substance. Each of the forms also advised Scheidt that possession of marijuana remained unlawful under federal law.

During her ATF interview, Scheidt stated she no longer possessed any of the firearms, having sold three of the firearms in a yard sale to a stranger and having sold another firearm to a friend of the family. ATF Special Agent Caleb Anderson asked Scheidt if she intended to resell the purchased firearms for money, to which Scheidt responded "kind of, yeah."

Scheidt contacted ATF investigators the following day to inform them that she had lied during her first interview. Specifically, Scheidt stated she sold five of the firearms to the previously named family friend, but she was also aware that he was connected to Mexican drug cartels and had been aware of those connections prior to selling the firearms. Scheidt also admitted she was familiar with the individual that was found with one of her firearms after

killing a police officer.

## II.    Application of the Sentencing Guidelines

The guidelines calculation takes into consideration a reduction of two levels for acceptance of responsibility pursuant to § 3E1.1 of the United States Sentencing Guidelines. (PSIR ¶ 46). Additionally, the defendant assisted authorities in the investigation and prosecution of her own misconduct by admitting her criminal involvement to authorities and by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the government to avoid unnecessarily preparing for trial and allowing the government to allocate its resources efficiently. *See* U.S.S.G. § 3E1.1(b). The government filed a Notice with the Court indicating that in the view of the United States Attorney's Office, Scheidt was eligible for the additional one-point guidelines reduction under § 3E1.1(b). (ECF 47).

The government agrees with the probation officer's guidelines calculations as set forth in the PSIR. Specifically, the government agrees that Scheidt's offense level is 13, her total criminal history score is zero and her criminal history category is I. (PSIR ¶ 48, 53). These guidelines calculations result in an advisory range of 12 to 18 months of imprisonment on each count, with the sentences to run concurrently. (PSIR ¶ 84).

## III.  Argument

The Court must sentence the defendant after consideration of the factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The analysis of these factors applied to the defendant's case supports a sentence of 18 months of imprisonment – the high end of the applicable guidelines range – in the Bureau of Prisons ("BOP"), for each of the six counts in the Indictment, with each sentence running concurrent to the others. Such a sentence is sufficient, but not greater than necessary, to achieve the Court's sentencing goals.

### A. *Nature and Circumstances of the Offense*

As described above, Scheidt has pleaded guilty to making false statements to a licensed dealer of firearms and in an ongoing federal investigation.  The context surrounding Scheidt's lies cannot be overlooked, as law enforcement was seeking Scheidt during an investigation of the killing of a  police officer that had been gunned down earlier that day.  Scheidt should have been aware of the importance in providing truthful information in those circumstances, given her offenses relevance to an ongoing murder investigation.  The false addresses provided by Scheidt were used to facilitate her purchase of the firearms, with Scheidt being well aware that the information was false.

Similarly, Scheidt's denial of marijuana usage on the forms (despite openly discussing her habitual usage with investigators) demonstrated her goal of quickly obtaining the firearms with no regard for the honesty of her responses. Even though the purchaser of these firearms was not a prohibited person, Scheidt should have known that her buying the firearms and quickly reselling them for a profit was assisting others in circumventing the firearm vetting process. What Scheidt did from February to April of 2022 was very serious. It was also not a momentary lapse of judgment, but a repeated, willful decision to engage in deceitful behavior to circumvent federal firearms regulations. To Scheidt's credit, she did advise law enforcement of the false statements made during her ATF interview the following day.

*B. History and Characteristics of the Offender*

Scheidt has no prior criminal convictions, placing her in criminal history category I. This is uncommon in the federal system, however the nature of Scheidt's offense in Counts 1 through 5 ensures that most individuals charged with the same offense similarly lack prior felony (or other specified) convictions. Scheidt self-reported being raised in a good neighborhood, free from crime, despite some hardships within her home. (PSIR ¶ 59-61). While this case has been pending, Scheidt began receiving services related to various mental health diagnoses. (PSIR ¶ 68).

Despite an impending federal sentence in this matter and a strong incentive to be on her best behavior, Scheidt failed to attend three therapy appointments from May to June of 2023. (PSIR ¶ 68). Similarly, Scheidt admitted resuming the use of marijuana while on pretrial release beginning on Thanksgiving in 2022. (PSIR ¶ 71). Based on this violation of the terms of her pretrial release, Scheidt was referred to complete a substance abuse assessment through the same counseling center she has been receiving mental health services. Scheidt was recommended to complete individual counseling two to four times monthly; despite that, Scheidt has only attended one therapy appointment as of June 28, 2023. (PSIR ¶ 71).

The government is sympathetic to Scheidt's childhood trauma detailed in the presentence report. (PSIR ¶ 60). Similarly, the government does not doubt that the defendant's previous drug addiction to marijuana and/or methamphetamine is a contributing factor to her difficulties on pretrial release. However, looking at the defendant's conduct while on pretrial release shows an individual currently undeterred from criminal activity and not yet committed to abiding by the rules of the court.

*C. Seriousness of the Offense and Just Punishment*

The defendant's multiple false statements both in purchasing firearms and in being interviewed by law enforcement are unquestionably serious

offenses, especially given the context of how the firearms were disposed and why the defendant was being interviewed. The guidelines offer a just range of punishment given the defendant's conduct and imposition of a sentence within the applicable range would be just given that it would be commensurate with sentences imposed upon similarly situated offenders across the country. A sentence of 18 months (total) would represent justice in this case and would adequately reflect the seriousness of the offense and promote respect for the law.

*D. Deterrence*

The 18-month sentence requested by the government is a substantial sentence. This is particularly true given the fact that it will be the first executed sentence Scheidt has ever received.  It will also call for a period of supervised release or probation, which will give Scheidt a strong incentive to abide by the terms outlined by the Court which can include completing substance abuse treatment and refraining from committing new offenses.  An 18-month sentence would also take into account Scheidt's continued drug use while on pretrial release and problems with attending and completing counseling.  The nature of the instant offenses warrants a sentence within the advisory guideline range.  In order to deter Scheidt from future criminal behavior, this Court must impose a significant sentence, followed by a period

of federal supervised release.  A guideline sentence will achieve this purpose. Such a sentence of 18 months of incarceration is also likely to provide general deterrence to those who would be inclined to engage in similar conduct.

### E. Protecting the Public

A sentence of 18 months of imprisonment will incapacitate the defendant and prevent her from being a danger to the public. A term of supervised release following the term of imprisonment will assist the defendant in transitioning back to the community and will hold her accountable for remaining drug free. This period of intensive supervision will also protect the public from future criminal conduct of the defendant.

### F. Provision of Correctional Treatment

It is clear that the defendant has a substance abuse problem. A sentence of 18 months will allow the defendant to take advantage of the excellent substance abuse treatment and other rehabilitative programs offered by the BOP. Such treatment of the defendant during her period of incarceration will further protect the public against her commission of new controlled substance-related crimes upon her release from incarceration.

## IV.   Conclusion

Wherefore, based on the foregoing and in consideration of all facts set forth in the presentence report, the applicable sentencing guidelines and the

factors set forth in 18 U.S.C. § 3553(a), the government requests this Court sentence Echo A. Scheidt to a term of imprisonment of 18 months.

Respectfully submitted,

CLIFFORD D. JOHNSON
UNITED STATES ATTORNEY

BRENT ECENBARGER
Digitally signed by BRENT ECENBARGER
Date: 2023.07.31 15:14:46 -04'00'

By:  Brent Ecenbarger
Assistant United States Attorney
E. Ross Adair Federal Bldg.
& U.S. Courthouse
1300 S. Harrison Street, Room 3128
Fort Wayne, IN 46802-3489
Telephone: (260) 422-2595
Facsimile: (260) 426-1616
E-mail Address:
Brent.ecenbarger@usdoj.gov